# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-00829-SCT

*ARMIN J. MOELLER, JR. AND FUSELIER, OTT & MCKEE, P.A., LOUIS FUSELIER, EMILE C. OTT AND CURTISS MCKEE, INDIVIDUALLY*

*v.*

*AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/24/92 |
| TRIAL JUDGE: | HON. ROBERT P. SUGG |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LUKE, RICKY G. |
| | CRAIG, C. YORK, JR. |
| | H.D. GRANBERRY, III |
| ATTORNEYS FOR APPELLEE: | STRINGFELLOW, FORREST W. |
| | PAMELA E. GUNTER |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART, AND REMANDED - 9/5/96 |
| MOTION FOR REHEARING FILED: | 9/19/96 |
| MANDATE ISSUED: | 4/16/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

## PREAMBLE

¶1. The law firm of Fuselier, Ott and McKee, operating as a professional corporation, has appealed the denial by the Chancery Court of the First Judicial District of Hinds County of attorney's fees in defending a complaint filed against them by Armin J. Moeller, Jr., a discharged member of the firm, for which they sought reimbursement from American Guarantee and Liability Insurance Company, their liability insurance carrier. Moeller, in turn, has appealed the denial by the chancery court of full reimbursement for attorney's fees in defending a counterclaim filed against him by the law firm, and punitive damages sought by him against the carrier for failure to defend under the policy.

¶2. We reverse and remand Fuselier, Ott and McKee's appeal for a determination of reasonable attorney's fees incurred in defense of Moeller's complaint. On Moeller's appeal we affirm the special chancellor's award as to actual damages on attorney's fees and the chancellor's refusal to award punitive damages.

## FACTS

## OVERVIEW

¶3. American Guarantee and Liability Insurance Company (American Guarantee) is an insurance corporation with principal offices in New York City. On December 15, 1979, it issued to the professional law corporation of Fuselier, Ott, McKee and Moeller, P.A., its special multi-peril policy, extending through December 15, 1982. The members of this professional law corporation, who otherwise would have been partners, each owned corporate shares subject to a stock redemption agreement. There was also an employment agreement.

¶4. On March 31, 1982, Moeller was fired by Louis A. Fuselier, president of the corporation, who notified him that his employment would be terminated effective May 30, 1982.

¶5. On August 10, 1982, Moeller filed suit against the corporation and the other members individually in the Circuit Court of the First Judicial District of Hinds County. On October 27, 1982, the defendants filed an answer and counterclaim to the circuit court action. For reasons not relevant here, the suit was transferred to the Chancery Court of the First Judicial District of Hinds County.

¶6. Moeller charged the defendants with wrongfully discharging him, breaching the employment and stock redemption agreement, making fraudulent misrepresentations to get him to enter into and also to breach the agreement, and damaging his reputation. The counterclaim sought recovery of a sum due on a promissory note and a sum due from an advancement to Moeller and repayment of sums due under the stock redemption agreement if it were rescinded, and charged Moeller with wrongful solicitation of clients of the firm, interference with the firm's relationships with its clients, and defamation.

¶7. The action was heard before Special Chancellor Mike Carr, who rendered a judgment on January 20, 1984. In his written opinion, he found that there had been a breach of the employment and stock redemption agreement in locking Moeller out of the office and in failing to pay him sums due. The special chancellor awarded Moeller $64,913.66 damages under the employment and stock redemption agreement. He further found the defendants had tortiously interfered with Moeller's business relations. Thus the special chancellor found Moeller was entitled to $12,000 for loss of income, $20,000 for mental anguish and emotional disturbance, $51,000 in attorney's fees and $10,000 in punitive damages. In total, Moeller was awarded $157,913.66 in damages which the special chancellor assessed against the professional corporation and the other members of the firm individually.

¶8. Upon appeal, we affirmed in part and reversed in part. ***Fuselier, Ott and McKee, P.A. v. Moeller***, 507 So. 2d 63, 70 (Miss. 1987). On Moeller's contract damages, we affirmed an award of $27,265.66 for two months salary, accrued vacation pay and stock purchase price, less $7,500 owed by Moeller to the firm, for a net award of $19,765.66. ***Id***. at 66-69. We found that Moeller had not proven his

tort claims, and hence no basis existed for punitive damages, mental anguish damages, or attorney's fees. Accordingly, we reversed and rendered on Moeller's tort claims. *Id.* at 69-70.

¶9. The above facts encompass the essential basis of the litigation between the attorneys. What was addressed by Special Chancellor Carr and this Court serves as a preface for the present litigation.

## THE BEGINNING

¶10. Returning to the beginning of this litigation between Moeller and Fuselier, Ott and McKee, we first note that American Guarantee's multi-peril policy, in addition to covering property loss and premises liability, also provided liability coverage and the right and duty to defend the following:

I. COVERAGE P - PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

. . . .

Group B - *the publication or utterance of a libel or slander or of other defamatory or disparaging material*, or a publication or utterance in violation of an individual's right to privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

. . . .

If such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and *the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if the allegations of the suit are groundless, false or fraudulent*, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment for judgments or settlements.

Exclusions

This insurance does not apply:

. . . .

(c) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured.

(Ex. 1) (emphasis added).

¶11. Moeller's complaint against the law firm contained, among other things, the following allegations for which he sought $25,000 in damages along with attorney's fees and costs under this count.

> ***Plaintiff charges and alleges that the Defendants embarked on a course of conduct*** designed to misrepresent material facts to Plaintiff, to defraud him, and ***to damage his professional reputation and career.***

(Ex. 2) (emphasis added).

¶12. The firm's, counterclaim against Moeller contained the following allegations for which the firm sought damages as well as attorney's fees, expenses and costs:

> On or about April 1, 1982, ***the Counterdefendant*** began to solicit in person, by mail and with others, the legal representation of clients of the Association and ***began to attempt to personally injure the reputation and good will of the Association, as well as the reputations of Fuselier, Ott, and McKee.***

(Ex. 16, p. 12) (emphasis added).

¶13. The only part of either Moeller's complaint or the law firm's counterclaim which were covered under American Guarantee's policy are set forth above. All the remaining allegations are outside the policy.

¶14. When they incorporated, Fuselier, Ott and McKee retained the services of Charles Brocato with Magruder, Montgomery, Brocato & Hosemann, a law firm specializing in taxation. Fuselier, Ott and McKee made demands upon American Guarantee through its agent, the Walter Michel Agency, to acknowledge coverage. Fuselier also requested that Brocato be retained by American Guarantee to defend the suit. Initially, American Guarantee denied coverage. Brocato on August 18, 1982, wrote a letter to John Weeks, branch claims manager for American Guarantee, stating that there was coverage under the policy. After further review, American Guarantee agreed to provide a defense under a reservation of rights, but selected its own counsel. Weeks on September 2, 1982, wrote Fuselier, Ott and McKee, stating:

> We have received the summons and complaint in connection with the above entitled matter.
>
> . . . .
>
> It appears there is or may be a question as to the position of the company for reasons of questions of coverage concerning various allegations in the suit.
>
> . . . .
>
> We note, in the complaint, that Mr. Fuselier, Mr. Ott and Mr. McKee, are listed as individual defendants and you may want to hire your own counsel to defend the individual interest.. The lawsuit was our first notice of this case and it is possible further investigation may reveal other questions of coverage to be resolved at a later date.
>
> The purpose of this letter is to advise you that we will, at this time, proceed with the investigation, handling, and defense of this case with a full reservation of all of our rights. This is done with the distinct understanding that no action taken by us on your behalf shall constitute either an admission of coverage under the policy or an acknowledgment of any responsibility to

pay damages in any judgment against you. **We further reserve the right to withdraw from the handling of this matter upon notification to you**. . . . [T]he company does not waive any of the other policy provisions.

Because the amount demanded in the suit papers exceeds the limits of your policy, we wish also to afford you the opportunity to notify any excess insurance carrier you may have, or to employ, at your own expense, your personal attorney to represent you in connection with this case. Do not misunderstand us; we are not advising you to take any particular action, but we are simply giving you the opportunity of joining your own counsel if you so desire. It is also possible that some allegations of the lawsuit complaint may be covered under some other insurance carried by you or your firm with other companies and we suggest you also refer the matter to any professional liability insurance carrier you may have and ask them to discuss the lawsuit with our company so we can agree in any pro-ration that may be applicable.

We have referred this lawsuit to Heidelberg, Woodliff & Franks, Attorneys at Law, Suite 1030, Capital Towers, Jackson, Mississippi 39201, and should you decide to join your own attorney in this matter, we are sure that if they will contact the above firm, the latter will cooperate to the fullest extent.

(emphasis added).

¶15. Weeks testified that once American Guarantee decided to defend the suit, the carrier defended all claims whether or not they were covered. American Guarantee thus undertook the entire defense of the litigation on behalf of Fuselier, Ott and McKee, with the law firm of Heidelberg, Woodliff, and Franks employed and paid by American Guarantee. Robert T. Gordon, Jr. and David Dogan, attorneys at that firm, performed the legal services. The record shows that Brocato, counsel for Fuselier, Ott and McKee, and Gordon and Dogan, not only cooperated and jointly defended Moeller's complaint, but together actively pursued the counterclaim.

¶16. Brocato continued to represent Fuselier, Ott and McKee as the firm's own attorney, and at the expense of the law firm.

¶17. While American Guarantee was aware that its policy covered Moeller, it did not notify him of this coverage. Moeller never made any demand on the carrier to furnish him a defense and was represented throughout trial and on appeal by counsel employed and paid by him. While American Guarantee did not inform Moeller that he too might be covered under the policy, there is nothing in the record suggesting that American Guarantee attempted to conceal coverage from him or that it was aware that Moeller himself might not be aware he, too, was covered.

### THE PRESENT LAWSUIT

¶18. Following rendition of the chancellor's judgment in the litigation between Moeller and the firm, American Guarantee filed a complaint in chancery court on April 6, 1984, against the firm and against Moeller, seeking a declaratory judgment that it had properly fulfilled its duty to defend the law firm against Moeller's claims, that it had properly reserved its rights under the policy, and that it was not responsible for any portion of the judgment obtained against the firm. American Guarantee further contended that four counts in Moeller's complaint were not covered under the policy and that

American Guarantee was not obligated to defend the parties on appeal of the judgment. Although Moeller was named as a defendant in this action, no relief was requested of him.

¶19. Fuselier, Ott and McKee answered and filed a counterclaim requesting attorney's fees and expenses incurred by them in defending Moeller's action as well as damages for mental anguish, emotional distress and punitive damages.

¶20. Moeller answered and filed a counterclaim seeking actual damages, punitive damages and attorney's fees incurred in the declaratory judgment action. Moeller also contended that it was only after the filing of the declaratory judgment action that he learned that he, too, was covered under the above quoted section of American Guarantee's multi-peril policy. American Guarantee's complaint, served on Moeller on April 9, 1984, stated, "American Guarantee would show that Armin J. Moeller, Jr., was an insured under the policy as that term is defined in the policy." In his first answer, filed May 3, 1984, Moeller responded that he was "without sufficient knowledge or information to respond to the allegation[] . . . and therefore denies same."

¶21. Following American Guarantee's request for admissions, Moeller responded that he had insufficient knowledge to admit or deny the American Guarantee's policy was in effect, and stated further that he was never shown a copy of the insurance policy. While he was aware that Fuselier had made representations that the professional association had personal injury and property damage insurance, that no specifics were disclosed to him nor did anyone ever represent that he, individually, was an insured under this policy.

¶22. Moeller amended and counterclaimed on May 18, 1994, alleging that he had been injured by American Guarantee's failure to notify him of his insured status and afford him the same coverage as was provided Fuselier, Ott and McKee. At this time Moeller requested $175,000 in damages and attorney's fees.

¶23. Moeller amended again on May 29, 1984, alleging that American Guarantee tortiously:

   (1) withheld the existence of the policy from him;

   (2) afforded his co-insured a defense; and

   (3) assisted his co-insured in the institution and prosecution of the counterclaim.

All of these actions, Moeller alleged, favored his co-insureds interests over his. Moeller did not increase his demand for relief.

¶24. This Court rendered its decision on the suit between Moeller and the law firm on June 3, 1987. ***Fuselier, Ott & McKee, P.A. v. Moeller***, 507 So. 2d 63 (Miss. 1987). The trial on the declaratory judgment complaint of American Guarantee and the counterclaims of Fuselier, Ott and McKee, and Moeller, were heard before Special Chancellor R.P. Sugg in December, 1991.

¶25. As stated above, David Dogan cooperated with Brocato throughout the course of the proceedings. Both Brocato and Dogan agreed that Brocato had a greater role in accounting matters, since he had expertise in that area. Other than this, these two attorneys' opinions differed in what areas of responsibility each had in the earlier lawsuit.

¶26. While Dogan testified that his primary area of responsibility came in handling the answer and defense of Moeller's complaint he agreed that, as a trade-off for Brocato's greater role in the accounting matters, Heidelberg, Woodliff & Franks did "a good bit of the legal research that went into some of the theories of the [c]ounterclaim, without prosecuting them, but assisted him in kind of a swap-off on those two points."

¶27. Brocato testified that he considered there to be no way to divide the case, that everything was "one ball of wax," and that both attorneys "decided the counterclaim should be made in order to -- as part of the defense really." The answer and counterclaim of the firm was signed by Brocato and Gordon. American Guarantee expressly approved of their attorneys' method of handling Moeller's suit as evidenced by a blind postscript in a copy of the second reservation of rights letter in which Weeks instructed Gordon, "You will handle the [Moeller] counter-suit [in chancery court] same as the circuit court suit."

¶28. Special Chancellor Sugg rendered his opinion on June 27, 1992. As to Moeller's complaint the special chancellor ruled that American Guarantee was obligated to defend the firm under the insurance policy, but was not obligated to indemnify the firm for any acts not covered by the policy. Therefore, to protect itself, American Guarantee acted properly in defending under a reservation of rights. Further, the trial court held that American Guarantee had fulfilled its duty to defend and was not obligated to pay for the firm's defense.

¶29. As to Fuselier, Ott and McKee's counterclaim against Moeller, the special chancellor ruled that American Guarantee had the duty to defend Moeller because the allegations were within the coverage of the policy and no exclusions applied. The court further found that the lack of notice did not prevent recovery because: (1) there was no requirement of notice in the policy, and (2) it was ridiculous to require the insured to notify the insurer of its own lawsuit.

¶30. Thus, the court ruled, American Guarantee was liable for contractual damages. However, the court also held that Moeller was not entitled to the entire costs of his earlier lawsuit, only those attributable to the defense of the counterclaim. Moeller having put on no evidence of those independent costs, the trial judge found other evidence in the record to support an award of $10,975.03. The trial court held that Moeller was not entitled to punitive damages for failure to inform him that he was covered or from having to defend the counterclaim and that he was not entitled to attorney's fees in the present case.

¶31. Fuselier, Ott, and McKee have appealed, assigning as error the special chancellor's refusal to award attorney's fees for defending the complaint of Moeller and pre-judgment interest. Moeller has appealed, assigning as error the refusal of the special chancellor to award attorney's fees for his entire defense of the counterclaim against him and punitive damages.

## LAW

¶32. Certain basic questions face us in this case: the contractual obligations of American Guarantee, the ethical obligations of counsel, and the vicarious liability of American Guarantee.

## I.

## DUTY OF CARRIER

¶33. American Guarantee had a contractual obligation to furnish a legal defense to the members of this professional corporation for claims covered under its insurance policy, and to pay all sums they became legally obligated to pay for such claims. When an insured under a liability insurance policy is sued, the insurance company is contractually obligated to pay up to the limits of the policy all sums the insured becomes legally obligated to pay. Because the insurer must eventually pay whatever sums the insured becomes legally obligated to pay, the insurance carrier has the right to select the attorney retained to defend the claim. *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d 255, 263 (Miss. 1988). Liability policies generally, as in this case, by specific language give the carrier the right to select and employ defense counsel. Moreover, whenever a lawsuit filed against an insured contains an allegation or claim which is covered under the policy, the insurance carrier has a contractual duty to furnish a legal defense, whether the claim later proves to be meritorious or not. *Southern Farm Cas. Ins. Co. v. Logan*, 238 Miss. 580, 119 So. 2d 268, 270-71 (1961) ("The insurer's ultimate liability is not the criterion for determining whether the insurer is obligated to defend."). Thus, the obligation of the carrier is two-fold: first, to furnish a legal defense to the claim covered under the language of the policy and, second, to pay all sums the insured becomes legally obligated to pay therefor.

¶34. The liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy; it clearly has no duty to defend a claim outside the coverage of the policy. What about the special situation where the allegations of the complaint are covered by the liability policy, but the facts are such that it may very well develop at trial that the conduct of the insured was not covered by the policy? Or, the allegations of the complaint themselves are ambiguous so that read in one way there is no coverage, but read in another there is? Unquestionably, the insurance carrier has a right to offer the insured a defense, while at the same time reserving the right to deny coverage in event a judgment is rendered against the insured. *State Farm Mut. Auto. Ins. Co. v. Acosta*, 479 So. 2d 1089, 1092 (Miss. 1985).

¶35. When defending under a reservation of rights, however, a special obligation is placed upon the insurance carrier. While this Court has not been called upon to address this issue, other jurisdicitons have generally held that in such a situation, not only must the insured be given the opportunity to select his own counsel to defend the claim, the carrier must also pay the legal fees reasonably incurred in the defense. *See American Family Life Assurance Co. v. U.S. Fire Co*., 885 F.2d 826, 831 (11th Cir.1989); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120-21 (5th Cir.1983) ("When a reservation of rights is made . . . the insured may . . . pursue his own defense [and the] insurer remains liable for attorneys' fees") (interpreting Texas law); *Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1028 (9th Cir.1981); *CHI of Alaska, Inc. v. Employers Reinsurance Corp*., 844 P.2d 1113,1120 (Alaska 1993); *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984); *Northland Ins. Co. v. Heck's Service Co., Inc*., 620 F.Supp. 107, 108 (D.C.Ark.1985); *Bryan v. State-Wide Ins. Co.*, 144 A.D.2d 325, 533 N.Y.S.2d 951 (1988); *Pepper Construction Co. v. Casualty Ins. Co.*, 145 Ill.App.3d 516, 99 Ill.Dec. 448, 495 N.E.2d 1183 (1986); *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 355 N.E.2d 24 (1976). *See also* Todd R. Smyth, Annotation, *Duty of Insurer to Pay for Independent Counsel When Conflict of Interest Exists Between Insured and Insurer*, 50 A.L.R.4th 932, 944-46 (1986) and (Supp. 1994). As one court reasoned:

In cases where an insurer asserts either policy or coverage defenses, and defends its insured under a reservation of rights, there are various conflicts of interest between the insurer and the insured. . . . First, if the insurer knows that it can later assert non-coverage, or if it thinks that the loss which it is defending will not be covered under the policy, it may only go through the motions of defending: 'it may offer only a token defense. . . . [I]t may not be motivated to achieve the lowest possible settlement or in other ways treat the interests of the insured as its own.'. . . Second, if there are several theories of recovery, at least one of which is not covered under the policy, the insurer might conduct the defense in such a manner as to make the likelihood of a plaintiff's verdict greater under the uninsured theory. . . . Third, the insurer might gain access to confidential or privileged information in the process of the defense which it might later use to its advantage in litigation concerning coverage.

*CHI of Alaska, Inc. v. Employers Reinsurance Corp*., 844 P.2d 1113, 1116 (Alaska 1993).

## II.

## THE INSURANCE CARRIER'S ATTORNEY

¶36. The attorney selected and employed by the insurance carrier, of course, has an ethical and professional obligation to represent the company. That attorney is the carrier's attorney. This attorney also has an ethical and professional obligation to represent the insured in the defense of the claim, thus representing two separate and distinct clients. Routinely, and in the vast majority of cases, defense counsel is presented with no conflict of interest between the two. The claim is covered by the policy, and the insurance carrier will pay in full any judgment rendered against the insured, Yet, such counsel must be careful at the time he is asked to represent the insurance carrier and the insured, and if there is any reason indicating a possible conflict of interest at the time of his employment, he should under no circumstances undertake to represent them both. Furthermore, any attorney representing two clients must remain on alert and ever watchful for any possible conflict of interest arising between the two, because the moment that happens, counsel should not attempt to represent them both. *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d 255, 270 (Miss. 1988); *State Farm Mut. Auto. Ins. Co. v. Commercial U. Ins. Co.*, 394 So. 2d 890, 894 (Miss. 1981).

¶37. When an attorney is offered employment by an insurance carrier, he should first ascertain if there is any reason there might be a conflict in representing the carrier and the insured. Is the carrier defending under a reservation of rights? Is the amount sued for in excess of the policy limits? Is it possible that a portion of the claim may be covered, and another not, or that the policy covers one theory of liability, but not another one? If so, he should undertake to represent only the interest of the insurance carrier for the part covered, and the insurance carrier should afford the insured ample opportunity to select his own independent counsel to look after his interest. *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d, 269 (Miss. 1988); *State Farm Mut. Auto. Ins. Co. v. Commercial U. Ins. Co.*, 394 So. 2d, 894 (Miss. 1981); *Anthony v. Frith*, 394 So. 2d 867 (Miss. 1981).[1]

¶38. Moreover, if during the representation of both parties a conflict of interest arises, defense counsel should withdraw from representation of either if there is any possibility that representing one and not the other may be injurious to the client the attorney ceases to represent. *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d , 270 (Miss. 1988).

## A.

## COMPLAINT AGAINST FUSELIER, OTT AND MCKEE

¶39. Turning to this case, it is readily apparent that in Moeller's circuit court complaint against Fuselier, Ott and McKee, only the defamation claim was covered by the policy; other claims were not. American Guarantee owed Fuselier, Ott and McKee a legal defense to this particular claim, and to pay all sums of money the firm became legally obligated to pay for this particular claim. This is the sum total of the contractual obligation American Guarantee owed to the law firm. While it may have caused some inconvenience, it would have presented no conflict of interest for American Guarantee to employ an attorney solely to defend this claim.[(2)] American Guarantee would have defended, and in the event of judgment, paid this claim. Fuselier, Ott and McKee were perfectly free to employ their own counsel, as indeed they had, to defend the other claims made against the firm.

¶40. Rather than acknowledge that coverage was restricted to this one claim and furnish counsel for its defense, however, American Guarantee chose to defend it with a reservation of rights to later deny coverage. This presented a clear conflict of interest between itself and Fuselier, Ott and McKee. Moreover, American Guarantee chose to furnish legal representation for claims clearly outside the coverage of the policy with its own counsel, thus creating an additional conflict of interest by having the carrier's attorney defending claims obviously outside the coverage of the policy. *U. S. Fidelity and Guaranty Co. v. Louis A. Roser Co., Inc.*, 585 F.2d 932 (8th Cir. 1978); *Farmers Ins. Co. of Arizona v. Vagnozzi*, 675 P.2d 703, 706 (Ariz. 1983); *Prashker v. United States Guarantee Co.*, 136 N.E.2d 871 (1956); *225 East 57th Street Owners, Inc. v. Greater New York Mut. Ins. Co.*, 589 N.Y.S.2d 481 (N.Y. App. Div. 1992).

¶41. The law firm chosen by American Guarantee to defend this complaint was under a professional duty to recognize two conflicts of interest between American Guarantee and Fuselier, Ott and McKee, namely: (1) defending under a reservation of rights, and (2) attempting to represent both parties in defending all claims, only one of which was covered by the policy.

¶42. Because Fuselier, Ott and McKee was being defended under the defamation claim with a reservation of rights, American Guarantee was obligated to let them select their own attorney at American Guarantee's cost to represent them. Also, American Guarantee was under no obligation whatever to attempt any legal defense of the remaining claims.

¶43. A law firm which cannot be one hundred percent faithful to the interests of its clients offers no defense at all. "There is no higher ethical duty in the legal profession than complete absolute fidelity to the interest of the client." *State Farm Mut. Auto. Ins. Co. v. Commercial U. Ins. Co.*, 394 So. 2d 890, 894 (Miss. 1981). The law firm chosen by American Guarantee should have recognized it could not be faithful to the interests both the carrier and the law firm in attempting the defense of the defamation claim. Neither could it faithfully represent the interests of both the insurance carrier and the law firm when it attempted to represent all claims, only one of which was covered by the insurance policy and all the others were not.

¶44. American Guarantee, having chosen to defend all claims, was obligated to permit Fuselier, Ott, and McKee to select its own counsel for those claims outside the coverage of the policy. It follows that American Guarantee is liable for the reasonable legal expenses Fuselier, Ott and McKee incurred

in the defense of the complaint, and the special chancellor's holding that American Guarantee was not liable for such expenses is reversed.

## B.

## COUNTERCLAIM AGAINST MOELLER

¶45. American Guarantee's problems were further compounded when the law firm it chose decided to join in and participate with attorney Brocato in legal representation of Fuselier, Ott and McKee in a counterclaim against Moeller. As above noted, American Guarantee's sole obligation under its policy and insurance law was to legally defend that portion of Moeller's complaint seeking damages for defamation.

¶46. Fuselier, Ott and McKee and its counsel Brocato's decision to file and pursue a counterclaim against Moeller was of no concern or interest to American Guarantee unless it contained a claim covered under the terms of the policy. Further, if there were a claim for damages covered by the policy, it was the duty of American Guarantee to furnish Moeller, also an insured under the same policy, a legal defense to such claim, precisely as it was its duty to furnish Fuselier, Ott and McKee a legal defense to the defamation claim portion of the complaint. Counsel for American Guarantee, however, chose to join in and participate in the legal representation of Fuselier, Ott and McKee in its counterclaim against Moeller, which contained a claim for defamation against Moeller. Counsel thus participated in an additional conflict of interest situation: while seeking to prevent their client American Guarantee from having to pay damages for Moeller's defamation claim, they actively sought to require their client, American Guarantee, to pay damages under Fuselier, Ott and McKee's counterclaim for damages for defamation, all under the same policy.

¶47. American Guarantee had a contractual duty to defend that portion of the counterclaim against Moeller which alleged defamation. It failed to do so. While it is ordinarily the case that it is the duty of the insured to notify the insurance carrier when a claim is made against him, ***Commercial Union Ins. Co. v. Dairyland Ins. Co.***, 584 So. 2d 407 (Miss. 1991), no such duty arose in this case because American Guarantee through its agent participated in the filing of the counterclaim, and therefore had full knowledge of it. Moreover, American Guarantee not only owed Moeller a defense to that portion of the counterclaim alleging defamation, because it had liability coverage on both sides of antagonistic parties, American Guarantee was obligated to permit each side to select their own individual counsel at the cost of American Guarantee. ***Joseph v. Markowitz***, 551 P.2d 571 (Ariz. 1976); ***O'Morrow v. Borad***, 167 P.2d 483 (Cal. 1946); *see also* Todd R. Smyth, Annotation, *Duty of Insurer to Pay for Independent Counsel When Conflict of Interest Exists Between Insured and Insurer*, 50 A.L.R.4th 932, 941-43 (1986) and (Supp. 1994). American Guarantee is therefore liable, as the special chancellor found, for reasonable attorney's fees in defending that portion of the counterclaim covered by the policy.

¶48. The special chancellor also ruled that because there was no attempt by Moeller in his proof to separate the legal expenses incurred in pursuing his own claim and in defending the defamation portion of the counterclaim filed by Fuselier, Ott and McKee, he would allow ten percent of the amount Moeller had paid in attorney's fees, or $10,975.03, as damages against American Guarantee. We find no error as to actual damages on attorney's fees awarded Moeller. ***State Farm Mut. Auto. Ins. Co. v. Commercial U. Ins. Co.***, 394 So. 2d 890, 895 (Miss. 1981).

## III.

## PUNITIVE DAMAGES

¶49. The consideration of misconduct for which punitive damages are sought involves two tiers. The first is legal: a consideration by the court itself whether the claimed misconduct is of such egregious nature that punitive damages in any amount should be considered. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1182 (Miss. 1990); *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 269 (Miss. 1985); *Blue Cross & Blue Shield of Mississippi v. Campbell*, 466 So. 2d 833, 842 (Miss. 1984) (Hawkins, J., denying petition for reh'g). Second, if the court finds that the claimed misconduct is of such serious nature, it is submitted to the fact-finder to determine if it actually occurred and the appropriate amount, if any, necessary to deter its recurrence. *Andrew Jackson*, 566 So. 2d at 1182-83. Of course, in chancery court, the chancellor wears two hats, that of judge and of fact-finder.

¶50. This Court, as many other courts, has struggled to articulate what type of misconduct constitute wrongdoing justifying any award of punitive damages, and our language, while familiar, remains of necessity unsatisfactory. "[I]f an insur[er] has a legitimate. . . or an arguable reason for failing to pay a claim, punitive damages will [generally] not lie." *Standard Life Ins. Co. of Inc. v. Veal*, 354 So. 2d 239, 248 (Miss. 1977); *see also Blue Cross & Blue Shield of Mississippi v. Campbell*, 466 So. 2d at 842. "Arguably-based denials are generally defined as those which were rendered upon dealing with the disputed claim fairly and in good faith." *Andrew Jackson*, 566 So. 2d at 1184. Further "[t]he test requires the plaintiff to show "some willful or malicious wrong or the gross negligence or reckless disregard for the rights of others." *Id.* at 1188 (Miss. 1990) (citation omitted). "Restated the law requires a finding of 'bad faith-plus' [a level of at least grossly negligent culpability] - based upon a preponderance of the evidence - before punitive damages may be awarded. *Andrew Jackson*, 566 So. 2d at 1188.

## A.

## COMPLAINT AGAINST FUSELIER, OTT AND MCKEE

¶51. In this case, the special chancellor found no basis for an award of punitive damages against American Guarantee in favor of Fuselier, Ott and McKee. Fuselier, Ott and McKee do not appeal from the special chancellor's denial of punitive damages.

## B.

## COUNTERCLAIM AGAINST MOELLER

### BANKS, JUSTICE, FOR THE COURT:

¶52. Moeller claims that the chancellor erred in failing to award punitive damages based upon the failure of American Guarantee to defend against the Fuselier, Ott and McKee counterclaim. We disagree.

¶53. American Guarantee did not refuse Moeller a defense or anything else. He never made a demand under the policy. The chancellor refused to accept Moeller's contention that he was unaware that he was an insured under the policy because, in his view, Moeller was an experienced attorney and an officer of the professional association insured with full access to the policy. He found that Moeller knew that other members of the law firm were being defended by the insurer and yet made no effort at any time to obtain a copy of the policy. Finally, the chancellor found "no intentional abuse, insult, wrong, or gross negligence" amounting to an independent tort.[3]

> We have often held that a chancellor's finding of fact will not be reversed unless it is manifestly wrong. Citation of authority would be superfluous at this point. However, we think some elaboration might be beneficial upon an overlooked point, and that is, a judge's or chancellor's finding of fact is the equivalent of a jury's verdict upon conflicting evidence.

*Voss v. Stewart*, 420 So. 2d 761, 765 (Miss. 1982) *citing* **Hall v. State**, 247 Miss. 896, 157 So. 2d 781 (1963).

¶54. Moreover, no litigant is entitled to punitive damages as of right. The question is always one for the finder of fact to determine based upon the circumstances of the case: whether, in its view, the offender should be subjected to punishment in order to deter the offensive conduct. ***Harvey-Latham Real Estate v. Underwriters at Lloyd's, London***, 574 So. 2d 13, 17 (Miss. 1990). The fact-finder is never under a duty to award punitive damages. ***Allen v. Ritter***, 235 So. 2d 253, 256 (Miss. 1970). "The awarding of punitive damages, when allowable, is discretionary with the jury or with the judge trying cases without a jury." ***Ellis v. S. Pellegrini, Inc.***, 163 Miss. 385, 141 So. 273 (1932).

Conclusion

¶55. We reverse and remand Moeller's complaint against Fuselier, Ott and McKee for further proceedings consistent herewith.

**¶56. PARTS I, IIB AND IIIA AFFIRMED: LEE, C.J., PITTMAN, BANKS, MCRAE, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. PRATHER, P.J., NOT PARTICIPATING.**

**PART IIA: REVERSED AND REMANDED: LEE, C.J., PITTMAN, BANKS, MCRAE, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. PRATHER, P.J., NOT PARTICIPATING.**

**PART IIIB AFFIRMED: LEE, C.J., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MCRAE, J. PRATHER, P.J., NOT PARTICIPATING.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING TO PART III B:**

## COUNTERCLAIM AGAINST MOELLER

¶57. This Court is faced with the circumstance of American Guarantee, through its agents, actively participating in the filing and pursuit of a counterclaim against its insured Moeller, failing to notify him of his rights under the insurance policy, and failing to furnish him any kind of legal defense to the counterclaim.

¶58. The consideration of misconduct where a party seeks punitive damages involves two tiers. The first is a legal consideration by the court itself whether the misconduct is of such egregious nature that punitive damages in any amount should be considered. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1182 (Miss. 1990); *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 269 (Miss. 1985); *Blue Cross & Blue Shield of Miss. v. Campbell*, 466 So.2d 833, 842 (Miss. 1984) (Hawkins, J., denying petition for reh'g). Second, if the court finds that the misconduct is of such serious nature, the court submits the question to the fact-finder to determine the appropriate amount. *Andrew Jackson Life Ins. Co.*, 566 So. 2d at 1182-83 (Miss. 1990). In chancery court, the chancellor, of course, wears two hats, that of the judge and the fact-finder.

¶59. The chancellor did not proceed beyond the first tier because he concluded that there was no basis for punitive damages. The chancellor misapprehended there was no evidence of a "willful or malicious wrong or the gross negligence or reckless disregard for the rights of others" amounting to an independent tort. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1188 (Miss. 1990) (citation omitted). An evaluation of whether an insurer's actions amount to a grossly negligent level of culpability is a legal conclusion we review *de novo*. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1183 (Miss. 1990); *Blue Cross & Blue Shield of Miss.*, 466 So.2d at 842 (Hawkins, J., denying petition for reh'g) (emphasis in original).

¶60. American Guarantee knew that Moeller was an insured under the insurance policy. John Weeks, branch claims manager, admitted this during the trial. As to notifying Moeller, Weeks testified the defamation allegation in Fuselier, Ott & McKee's counterclaim paralleled Moeller's defamation claim. He was also aware that American Guarantee's home office had directed him to offer a reservation of rights defense to Fuselier, Ott & McKee. Weeks, however, claimed he didn't know that the multi-peril policy covered the claim. We hold that Weeks was, at least, grossly negligent in not perceiving this fact, having been told so by his superiors. Weeks testified he wanted attorneys who were loyal to him. He refused to hire Charles Brocato to defend Fuselier Ott & McKee because Brocato would not agree to withdraw in the event a conflict should arise. This admission that he wanted attorneys who would follow his instructions and instigate a counterclaim against an insured is further evidence of intentional misconduct.

¶61. The special chancellor did not consider American Guarantee's failure to perform its obligation to offer Moeller a legal defense to Fuselier, Ott and McKee's defamation counterclaim against him legally sufficient to justify punitive damages in any amount in Moeller's counterclaim against American Guarantee. Instead the chancellor looked to Moeller's state of mind. Moeller made a prima facie case for the lower court to consider imposition of punitive damages. Instead of concentrating on the insurer's actions, the chancellor instead concentrated on the Moeller's state of mind. I would remand Moeller's counterclaim against American Guarantee for the sole purpose of addressing this factual issue of whether Moeller should receive punitive damages.

¶62. I respectfully dissent from the majority view on the counterclaim.

**McRAE, J., JOINS THIS OPINION.**


1. In *Anthony v Frith*, we addressed the question of whether public policy prohibited an automobile liability insurance policy covering conduct subjecting the insured to punitive damages as well as actual damages. We held there was no public policy prohibition against such coverage, and implicit in that holding was the ethical difficulty any lawyer chosen by the insurance carrier would face in defending the action if the actual damages claim was covered and the punitive damages claim was not.

2. It is not novel for a plaintiff in a personal injury complaint to have a counterclaim filed for property damages or personal injuries or both alleged to have been sustained by the defendant in the accident. The plaintiff's insurance carrier has the right to employ its own counsel to defend the counterclaim.

3. The dissent suggests that the trial court wrongfully focused upon Moeller's state of mind rather than the wrongful act of the defendant. As we view it, the trial court considered whether American Guarantee may be justly held accountable for punitive damages for faulure to defend where no demand for the provision of a defense was made. The discussion of Moeller's state of mind relates solely to whether he should be excused for not having made the demand. The fact remains that no demand for a defense was made and therefore none was denied in such a manner as would support punitive damages.